**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO:**

TORI VAN LEHN, on behalf of herself
and all others similarly situated*,*

      Plaintiff(s),
      v.

UNCLE AL'S SPORTS CAFÉ SUNRISE, INC.
d/b/a LUV'N OVEN ALE HOUSE, and
DEBORAH ALVAREZ, individually,

      Defendants.
_____/

## COLLECTIVE/CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, TORI VAN LEHN ("Plaintiff") on behalf of herself and all others similarly situated, and pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, Fla. Stat. 448.440, and Art. X, Sec. 24 of the Florida Constitution, files this Collective/Class Action Complaint for Damages and Demand for Jury Trial against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE ("Luv'n Oven Ale House") and DEBORAH ALVAREZ ("Alvarez") (Ale House and Alvarez collectively referred to as "Defendants"), for their failure to pay restaurant servers and bartenders state and federal minimum wages during the relevant time period, as follows:

## INTRODUCTION

1. Plaintiff brings this collective and class action under the Fair Labor Standards Act ("FLSA") and Florida Minimum Wage Act ("FMWA") on behalf of herself and all restaurant servers and bartenders who work or have worked at the Luv'n Oven Ale House restaurant located at 10033 Sunset Strip, Sunrise, Florida 33322 during the applicable statute of limitations.

Defendants committed federal and state minimum wage violations because they compensate restaurant servers and bartenders at the reduced "tip credit" wage notwithstanding that servers and bartenders are required to spend more than 20% of their shifts performing non-tipped duties and side work.  Defendants have also violated state and federal law by claiming a tip credit during shifts when servers and bartenders are required to spend 30 or more continuous minutes on side work and non-tipped duties. As a result, Plaintiff, and similarly situated restaurant servers and bartenders have been denied applicable wages in one or more workweeks during the relevant time period.

## PARTIES

2.       During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris.*

3.       Plaintiff and the **FLSA putative collective members** are/were restaurant servers and bartenders who worked for Defendants within the last three (3) years at Luv'n Oven Ale House in Sunrise, Florida.

4.       Plaintiff and the **FMWA putative class members** are/were restaurant servers and bartenders who worked for Defendants within the last five (5) years at Luv'n Oven Ale House in Sunrise, Florida.

5.       Plaintiff worked for Defendants as a restaurant server and bartender at Luv'n Oven Ale House from in or around February 2020 until on or about July 30, 2022.

6.       The proposed collective and class members worked for Defendants in the same capacity as Plaintiff in that they were restaurant servers and/or bartenders for Defendants at the Luv'n Oven Ale House restaurant located in Sunrise, Florida.

7.     Plaintiff seeks certification of three (3) separate collectives under 29 U.S.C. § 216(b) for violations of the FLSA as follows:

> **80/20 Opening Shift Collective: All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of an opening shift performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

> **80/20 Closing Shift Collective: All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of a closing shift performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

> **Substantial Side Work Collective: All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the three (3) years preceding this lawsuit who were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift.**

8.     Plaintiff also seeks certification of three (3) separate classes under Fed. R. Civ. P. 23 and the FMWA and Florida Constitution for violations of the Florida Minimum Wage Act, as follows:

> **80/20 Opening Shift Class: All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of an opening shift performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

> **80/20 Closing Shift Class: All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of a closing shift performing "non-tipped" side work and did not receive the full applicable minimum wage.**

**Substantial Side Work Class: All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the five (5) years preceding this lawsuit who were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift.**

9.      The precise size and identity of each collective and class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of class members in each class above exceeds 50 restaurant servers and bartenders.

10.     During all times material hereto, Defendant, Luv'n Oven Ale House, was a Florida For-Profit Corporation operating and transacting business within Broward County, Florida, within the jurisdiction of this Honorable Court.

11.     Defendant, Alvarez, is a resident of Broward County, Florida, and is subject to the jurisdiction of this Honorable Court.

12.     Defendants own, operate and control the Luv'n Oven Ale House Restaurant located at 10033 Sunset Strip, Sunrise Fl 33322.

13.     Defendants were Plaintiff's "employer," as defined by the FLSA and FMWA, during all times pertinent to the allegations herein.

14.     Defendants were also Plaintiff's "joint employer" as defined by the FLSA, FMWA, and all pertinent regulations during all times material hereto.

15.     During all times material hereto, Defendant, Luv'n Oven Ale House, was vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of the Luv'n Oven Ale House Restaurant located at 10033 Sunset Strip, Sunrise Fl 33322.

16.     During all times material hereto, Defendant, Alvarez, was also vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of the Luv'n Oven Ale House restaurant located at 10033 Sunset Strip, Sunrise Fl 33322.

17.     Defendants implement uniform pay, tip, and time keeping practices at the Luv'n Oven Ale House restaurant as they apply to all restaurant servers and bartenders.

18.     Plaintiff and putative collective and class members are/were non-exempt, hourly restaurant servers and bartenders.

## JURISDICTION AND VENUE

19.      This action is brought under 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, the Florida Minimum Wage Act ("FMWA") and Article X Section 24 of the Florida Constitution to recover damages from Defendants, injunctive relief, and reasonable attorney's fees and costs.

20.     This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367

21.     The acts and/or omissions giving rise to this dispute took place within Broward County, Florida, which falls within the jurisdiction of this Honorable Court.

22.     Defendants regularly transact business in Broward County, Florida, and jurisdiction is therefore proper.

23.     Venue is also proper within Broward County, Florida.

24.     Plaintiff fulfilled all conditions precedent required to bring her class action claims under the FMWA.

25.     More specifically, on August 9, 2022, through her counsel, Plaintiff served Defendants with a written pre-suit demand and notice regarding her FMWA claims, requesting that Defendants pay her and the putative FMWA classes the minimum wages owed to them.

Defendants refused to pay Plaintiff or the FMWA classes any wages whatsoever within the statutory notice period. This lawsuit followed.

## FLSA COVERAGE

26.     Defendant, Luv'n Oven Ale House, is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendants had at least two employees engaged in commerce or in the production of goods for commerce, or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

27.     During all time periods pertinent hereto, Defendant, Luv'n Oven Ale House's employees regularly handled goods such as food, beverages, napkins, silverware, appliances, rice, beer, vodka, meat, chicken, pork, cheese, broccoli, carrots, peas, oil, zucchini, wings, mahi mahi, salmon, onions, peppers, crab, vinegar sauce, shrimp, beef, steak, potatoes, bread, hot sauce, cheese, marinara sauce, pretzels, buns, nachos, calamari, chicken tenders, jalapenos, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, mints, flour, sugar, coffee, tea, soda, water bottles, and other materials that had previously travelled through interstate commerce.

28.     Defendant, Luv'n Oven Ale House, had an annual gross revenue in excess of $500,000.00 in 2017, 2018, 2019, 2020, 2021 and is expected to gross in excess of $500,000.00 in 2022.

## GENERAL ALLEGATIONS

29.     During all times material hereto, Defendant, Alvarez, was an owner, operator, and corporate officer of the Luv'n Oven Ale House Restaurant.

30.     Defendant, Alvarez, had supervisory authority of Plaintiff and all other servers and bartenders during the all times material hereto.

31.     Plaintiff worked for Defendants as a restaurant server and bartender during her employment period.

32.     During Plaintiff's employment period, Defendants **did not** track the time servers or bartenders spent performing side work and non-tipped duties in the restaurant.

33.     Moreover, during all times material hereto, Defendants claimed a tip credit and paid Plaintiff and all other servers and bartenders the reduced wage for tipped employees, including during shifts when they spent a substantial amount of continuous time performing side work and non-tipped duties.

## DEFENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED SERVERS AND BARTENDERS TO SPEND MORE THAN 20% OF EACH OPENING SHIFT ON NON-TIPPED DUTIES AND SIDE WORK

34.     Federal law prohibits employers from taking a tip credit when an employee performs non-tip generating duties for more than 20% of their shift.  Rafferty v. Denny's Inc., 13 F4th 1166, 1188 (11th Cir. 2021). In other words, when restaurant servers and bartenders spend 20% or more of any respective shift performing non-tip generating duties, they must be paid the full minimum wage, as opposed to the reduced minimum wage for tipped employees.[1]  *Id.*

35.     Defendants claimed a tip credit for all of Plaintiff's work, including during shifts in which Plaintiff spent more than 20% of her time on non-tip producing duties and side work.

36.     In 2018, servers and bartenders were compensated at the reduced wage of $5.23 per hour for their first forty (40) hours of work per week.  Defendants paid servers and bartenders the

---

[1] The maximum tip credit permissible under federal law is $2.13 cents and $3.02 cents under state law. However, as stated above, an employer cannot claim a tip credit if its employee spends more than 20% of any respective shift performing non-tip producing duties.

reduced cash wage of $5.44 per hour in 2019, $5.54 per hour in 2020, $5.63 per hour in from January 1, 2021, through September 29, 2021 and $6.98 per hour from September 30, 2021 through the present.

37.     During her employment period with the Defendants, Plaintiff and members of the putative collectives and classes of servers and bartenders were assigned both "opening" shifts and "closing" shifts.

38.     The typical opening shift schedule is from about 10:30 am until about 5:00 pm.

39.     The Luv'n Oven Ale House restaurant opens to the public at 11:00 am.

40.     Prior to opening the restaurant, from approximately 10:30 am to 11:00 am – a period of at least thirty (30) minutes – Defendants instructed Plaintiff and all other similarly situated restaurant servers and bartenders to make salads, unstack chairs, wipe down surfaces, prepare lights and signs, cut fruit, fill salt and pepper shakers, roll silverware, set tables, clean the beverage stations, clean tables, clean condiments, clean the outside of the restaurants, make coffee, and perform additional side work and "non-tipped" duties which are merely incidental or completely unrelated to the employees' tipped duties.

41.     Furthermore, prior to opening to the public, Plaintiff and the other servers and bartenders were paid the reduced tip credit wage, even though the restaurant was closed and its employees could not earn any tips.

42.     Before completing each "opening" shift, Plaintiff and the putative class members were required to perform the same "non-tipped" duties and responsibilities as outlined in the preceding paragraphs.  At a minimum, when combining the pre-shift and post-shift duties, Plaintiff spent approximately two (2) full hours performing non-tipped duties and side work. Accordingly, Plaintiff and the class of similarly situated servers and bartenders spent more than 20% of opening

shifts performing non-tipped duties and side work but were nevertheless paid the reduced wage for their entire shift.

43.     As a result, Plaintiff and members of the putative collectives and classes are entitled to recover the applicable tip credit for the time they spent performing "non-tipped" incidental duties and side work during each opening shift, as opposed to the reduced wage they received when performing these non-tipped duties and side work.

44.     Plaintiff and the ***federal minimum wage collective*** members are entitled to recover at least federal minimum wage for each hour spent performing "non-tipped" duties and side work during opening shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

45.     Similarly, Plaintiff and the ***Florida minimum wage class*** members are entitled to recover at least the Florida minimum wage for each hour spent performing "non-tipped" duties and side work during opening shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

## DEFEENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED SERVERS AND BARTENDERS TO SPEND MORE THAN 20% OF CLOSING SHIFTS PERFOMRING NON-TIPPED DUTIES AND SIDE WORK

46.     When working the "closing" shift, Plaintiff and all other similarly situated servers and bartenders report to work at around 5:00 p.m. and are scheduled to work through around 12:00 a.m.  During the entire closing shift, Plaintiff and all other servers and bartenders are paid a reduced wage for tipped employees (even though there are no customers for at least 1-hour of each closing shift).

47.     However, before and after each "closing" shift, Plaintiff and the putative class members are instructed to stack chairs, wipe down surfaces, prepare lights and signs, fill salt and pepper shakers, roll silverware, clean the beverage stations, clean tables, clean condiments, clean

the outside of the restaurants, and perform additional "non-tipped" duties and side work which are merely incidental to the employees' primary duties in the restaurant.

48.     During a typical "closing" shift, Plaintiff and putative class members are regularly required to spend a total of ***more than* 20%** of the shift performing the aforementioned "non-tipped" duties and side work.

49.     In 2018, servers and bartenders were compensated at the reduced wage of $5.23 per hour for their first forty (40) hours of work per week.  Defendants paid servers and bartenders the reduced cash wage of $5.44 per hour in 2019, $5.54 per hour in 2020, $5.63 per hour in from January 1, 2021, through September 29, 2021, and $6.98 per hour from September 30, 2021 through the present.

50.     As a result, Plaintiff and members of the putative collectives and classes are entitled to recover the applicable tip credit for the time spent each shift performing "non-tipped" incidental duties and side work, as opposed to the reduced wage they received.

51.     Plaintiff and the ***federal minimum wage collective*** members are entitled to recover at least federal minimum wage for each hour spent performing "non-tipped" incidental work and side work during closing shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

52.     Plaintiff and the ***Florida minimum wage class*** members are entitled to recover at least the Florida minimum wage for each hour spent performing "non-tipped" incidental work and side work during closing shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

## DEFEENDANTS REQUIRE PLAINTIFF AND ALL OTHER SERVERS AND BARTENDERS TO SPEND 30 OR MORE CONTINUOUS MINUTES ON NON-TIPPED DUTIES AND SIDE WORK DURING EACH SHIFT

53.     Side work and non-tipped work which take 30 or more continuous minutes is not considered "part of the tipped occupation." *See* 29 C.F.R. § 531.56(f)(4)(ii).

54.     Accordingly, employers are forbidden from taking a tip credit when they compel tipped employees to spend 30 or more continuous minutes on non-tipped duties and side work.

55.     During all times material hereto, Defendants required all servers and bartenders to arrive at opening shifts at least 30 minutes before the restaurant was open to the public.

56.     Moreover, during all times material hereto, Defendants required servers and bartenders to perform side work and non-tipped duties for 30 or more continuous minutes at the end of closing shifts, often when servers and bartenders did not have any customers and the restaurant was closed to the public.

57.     Plaintiff and the ***federal minimum wage*** collective members are entitled to recover at least federal minimum wage for each the time spent performing "non-tipped" duties and side work which equals or exceeds 30 continuous minutes per shift.

58.     Plaintiff and the ***Florida minimum wage*** class members are entitled to recover at least the Florida minimum wage for the time spent performing "non-tipped" duties and side work which equals or exceeds 30 continuous minutes per shift.

## CLASS ALLEGATIONS

59.     Class members are treated equally and similarly at the Luv'n Oven Ale House restaurant that is owned and operated by Defendants, in that they were denied state and federal minimum wages when they spent more than 20% of opening and closing shifts performing "non-tipped" duties and side work.

60.     Defendants employed at least fifty (50) servers and bartenders in Sunrise, Florida, who were required to spend at least 30 continuous minutes per shift on non-tipped duties and side work during the course of the previous five (5) years.

61.     At all times material hereto, Defendants had express or constructive knowledge of the work performed by Plaintiff and other similarly situated employees.

62.     Moreover, at all times material hereto, Defendants had express or constructive knowledge of the time Plaintiff and other similarly situated employees worked but failed to keep and maintain accurate time records, thereby violating state and federal law.

63.     Plaintiff and the class members performed the same job duties for Defendants in Sunrise, Florida, as restaurant servers and bartenders, and were otherwise paid in an identical manner by Defendants based on Defendants' failure to compensate Plaintiff and the class members properly when more than 20% of their shifts consisted of "non-tipped" duties and side work and when Plaintiff and class members were required to spend substantial time on "non-tipped" duties and side work.

64.     During their employment, Plaintiff and one or more members of the class complained about the illegal practices above; however, Defendants took no action to stop the illegal pay practices.

65.     Although Defendants were aware of the requirements of the FLSA and FMWA, and the pertinent regulations thereto, Defendants' willfully and/or intentionally failed to pay Plaintiff and the class members in accordance with the state and federal law.

**COUNT I – FED. R. CIV. P. 23 CLASS ACTION**
**FOR FLORIDA MINIMUM WAGE VIOLATIONS**
**(80/20 VIOLATIONS DURING OPENING SHIFTS)**

66.     Plaintiff hereby re-avers Paragraphs 1 through 65 as though set forth fully herein.

67.     Defendants claimed a tip credit for each hour of work for Plaintiff and all other servers and bartenders during the previous five (5) years.

68.     Plaintiff and all others similarly situated are/were entitled to be paid Florida's full minimum wage during their employment with Defendants.

69.     Plaintiff and the proposed class members were subjected to similar violations of Florida law as a result of Defendants' failure to pay them the full state minimum wage when they were required to spend more than 20% of their opening shifts performing non-tipped duties and side work.

70.     Plaintiff seeks recovery of *Florida minimum wages* under Fed. R. Civ. P. 23 for herself and the following class for Defendants' failure to pay constitutionally mandated state minimum wages:

> **All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida, during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their <u>opening shift</u> performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

### RULE 23 CLASS ALLEGATIONS

71.     Plaintiff brings her FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class.

72.     The putative 80/20 Opening Shift Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wage based upon the Defendants requiring Plaintiff and similarly situated servers and bartenders to spend more than 20% of opening shifts performing non-tipped duties and side work.

73.     *Numerosity*: Defendants employed more than 50 servers and bartenders at their restaurant in Sunrise, Florida during the past five (5) years who were required to spend more than

20% of their opening shifts performing non-tipped duties and side work and were not paid the pertinent Florida minimum wage.  Given Defendants' size and the systematic nature of their failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

74.     Plaintiff and the 80/20 Opening Shift Class members were victims of the same policies, including Defendants' requirement that employees spend more than 20% of opening shifts performing non-tipped duties and side work.

75.     *Commonality*: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff.  Such questions common to the Class include, but are not limited to the following:

      (a) Whether Plaintiff and the 80/20 Opening Shift Class members were "employees" of Defendants;

      (b) Whether Plaintiff and the 80/20 Opening Shift Class's hours were properly recorded;

      (c) Whether Defendants violated the Florida minimum wage rights of Plaintiff and the 80/20 Opening Shift Class under the FMWA by failing to compensate the putative class the full state minimum wage when they spent more than 20% of opening shifts performing non-tipped duties and side work;

      (c) Whether Defendants willfully or intentionally refused to pay Plaintiff and the 80/20 Opening Shift Class Florida minimum wages;

(d) Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and

(e) The nature, extent, and measure of damages suffered by the Plaintiff and the 80/20 Opening Shift Class.

76.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the 80/20 Opening Shift Class.  Plaintiff's claims arise from the Defendants' company-wide policy of requiring all servers and bartenders to spend more than 20% of their opening shifts on non-tipped duties and side work without being paid the full applicable Florida minimum wage.

77.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the 80/20 Opening Shift Class.  Plaintiff has no interest that might conflict with the interests of the 80/20 Opening Shift Class.  Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

78.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

79.    Defendants acted on grounds generally applicable to the 80/20 Opening Shift Class, thereby making relief appropriate with respect to the 80/20 Opening Shift Class as a whole. Prosecution of separate actions by individual members of the 80/20 Opening Shift Class would

create the risk of inconsistent or varying adjudications with respect to the individual members of the 80/20 Opening Shift Class that would establish incompatible standards of conduct for Defendants.

80.     The identity of the 80/20 Opening Shift Class is readily identifiable from Defendants' records.

81.     Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the 80/20 Opening Shift Class.

82.     Plaintiff and the 80/20 Opening Shift Class members performed the same job duties, as restaurant servers and bartenders, and were paid in an identical manner by Defendants based on Defendants requiring the restaurant servers and bartenders to spend more than 20% of their opening shift on non-tipped duties and side work without paying the restaurant servers and bartenders at least the full applicable Florida minimum wage.

83.     Plaintiff and the 80/20 Opening Shift Class members were not paid proper Florida minimum wages when their non-tipped duties and side work exceeded 20% of any particular shift.

84.     Defendants were aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the 80/20 Opening Shift Class members in accordance with the law.

85.     This action is intended to include each and every restaurant server and bartender who worked for Defendants at their restaurant in Sunrise, Florida during the past five (5) years who was required to spend more than 20% of his/her opening shift performing non-tipped duties and side work.

86.     During all material times hereto, Plaintiff and all 80/20 Opening Shift Class members are/were non-exempt employees of Defendants.

87.     Restaurant servers and bartenders' work for Defendants is an integral part of Defendants' business.

88.     Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages by not paying Plaintiff and the putative class members at least Florida's minimum wage for all hours worked.

89.     In 2018, the Florida minimum wage was $8.25.

90.     In 2019, the Florida minimum wage was $8.46.

91.     In 2020, the Florida minimum wage was $8.56.

92.     From January 1, 2021, until September 29, 2021, the Florida minimum wage was $8.65 per hour.

93.     Beginning on September 30, 2021, the Florida minimum wage was $10.00 per hour.

94.     During their employment, Plaintiff and one or more of the 80/20 Opening shift Class members complained about the illegal practices above; however, Defendants took no action to stop any of the illegal practices.

95.     Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand before this claim was filed.

96.     More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative 80/20 Opening Shift Class for the minimum wages owed.

97.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

98.     Furthermore, even if every member of the 80/20 Opening Shift Class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

99. The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution;

(b) Payment by the Defendants of liquidated damages caused by their intentional and/or willful failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida;

(c) Payment by the Defendants of the costs and expenses of this action, including attorney's fees of Plaintiff's counsel.

100.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the 80/20 Opening Shift Class members have been damaged in the loss of *Florida* minimum wages for one or more weeks of work during their employment with Defendants.

WHEREFORE, Plaintiff, TORI VAN LEHN, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE and DEBORAH ALVAREZ, and award

Plaintiff, and all others similarly situated: (a) unliquidated Florida minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted by the FMWA and Fla. Stat. 448.08; and any and all such further relief as the Court deems just and reasonable under the circumstances.

### COUNT II - COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATIONS DURING OPENING SHIFTS)

101.    Plaintiff hereby re-avers Paragraphs 1 through 65 as though set forth fully herein.

102.    Plaintiff and all others similarly situated are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendants.

103.    Defendants claimed a tip credit for each hour of work for Plaintiff and all other servers and bartenders during all times material hereto.

104.    However, Plaintiff and the proposed collective members were subjected to similar violations of federal law as a result of the Defendants' failure to pay them the full minimum wage when they were required to spend more than 20% of opening shifts performing non-tipped duties and side work.

105.    Plaintiff seeks recovery of these federal minimum wages under 29 U.S.C. § 216(b) for herself and the following collective for Defendants' failure to pay federally mandated minimum wages:

> **All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their opening shift performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

106.    Defendants willfully failed to pay Plaintiff and the putative collective members the full federal minimum wage for one or more weeks of work.

107.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the collective members have been damaged in the loss of federal minimum wages for one or more weeks of work during their employment with Defendants.

108.    Defendants' willful and/or intentional violations of entitle Plaintiff and the putative collective members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, TORI VAN LEHN, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE and DEBORAH ALVAREZ, and award Plaintiff, and all others similarly situated: (a) unliquidated federal minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

### COUNT III – FED. R. CIV. P. 23 CLASS ACTION
### FOR FLORIDA MINIMUM WAGE VIOLATIONS
(80/20 VIOLATIONS DURING CLOSING SHIFTS)

109.    Plaintiff hereby re-avers Paragraphs 1 through 65 as though set forth fully herein.

110.    Defendants claimed a tip credit for each hour of work for Plaintiff and all other servers and bartenders during the previous five (5) years.

111.    Plaintiff and all others similarly situated are/were entitled to be paid Florida's full minimum wage for certain hours worked during their employment with Defendants.

112.    Plaintiff and the proposed 80/20 Closing Shift Class members were subjected to similar violations of state and federal law as a result of the Defendants' failure to pay them the full state minimum wage when they were required to spend more than 20% of their closing shifts performing non-tipped duties and side work.

113.    Plaintiff seeks recovery of the *Florida minimum wages* under Fed. R. Civ. P. 23 for herself and the following 80/20 Closing Shift Class for Defendants' failure to pay constitutionally mandated Florida minimum wages:

> **All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their <u>closing shift</u> performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

### RULE 23 CLASS ALLEGATIONS

114.    Plaintiff brings her FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class.

115.    The putative 80/20 Closing Shift Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wages based upon Defendants requiring Plaintiff and similarly situated servers and bartenders to spend more than 20% of closing shifts performing non-tipped duties and side work.

116.    *Numerosity:* Defendants employed more than fifty (50) restaurant servers and bartenders at their Sunrise, Florida restaurant during the past five (5) years who were required to spend more than 20% of their closing shifts on non-tipped duties and responsibilities and were not paid the applicable Florida minimum wage.  Given Defendants' size and the systematic nature of their failure to comply with Florida law, the members of the 80/20 Closing Shift Class are so numerous that joinder of all members is impractical.

117.    Plaintiff and the 80/20 Closing Shift Class members were victims of the same policies, including Defendants' requirement that employees spend more than 20% of closing shifts performing non-tipped duties and responsibilities.

118. *Commonality*: Common questions of law and fact exist as to all members of the 80/20 Closing Shift Class and predominate over any questions solely affecting any individual member of the 80/20 Closing Shift Class, including Plaintiff. Such questions common to the 80/20 Closing Shift Class include, but are not limited to the following:

(a) Whether Plaintiff and the 80/20 Closing Shift Class members were "employees" of Defendants;

(b) Whether Plaintiff and the Class's hours were properly recorded;

(c) Whether Defendants violated the Florida minimum wage rights of Plaintiff and the 80/20 Closing Shift Class under the FMWA by failing to compensate the putative class the full state minimum wage when they spent more than 20% of closing shifts performing non-tipped duties and side work;

(d) Whether Defendants willfully or intentionally refused to pay Plaintiff and the 80/20 Closing Shift Class Florida minimum wages;

(e) Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and

(f) The nature, extent, and measure of damages suffered by the Plaintiff and the 80/20 Closing Shift Class.

119. *Typicality*: Plaintiff's claims are typical of the claims of the members of the 80/20 Closing Shift Class. Plaintiff's claims arise from the Defendants' company-wide policy of requiring all servers and bartenders to spend more than 20% of their closing Shifts performing non-tipped duties and responsibilities without being paid the full applicable Florida minimum wage.

120.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the 80/20 Closing Shift Class.  Plaintiff has no interest that might conflict with the interests of the 80/20 Closing Shift Class.  Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

121.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

122.     Defendants acted on grounds generally applicable to the 80/20 Closing Shift Class, thereby making relief appropriate with respect to the 80/20 Closing Shift Class as a whole.  Prosecution of separate actions by individual members of the 80/20 Closing Shift Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the 80/20 Closing Shift Class that would establish incompatible standards of conduct for Defendants.

123.     The identity of the 80/20 Closing Shift Class is readily identifiable from Defendants' records.

124.     Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the 80/20 Closing Shift Class.

125.     Plaintiff and the 80/20 Closing Shift Class members performed the same job duties, as restaurant servers and bartenders, and were paid in an identical manner by Defendants based on Defendants requiring the restaurant servers and bartenders to spend more than 20% of their closing shift performing non-tipped duties and responsibilities without paying the restaurant servers and bartenders at least the full applicable Florida minimum wage.

126.     Defendants were aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the 80/20 Closing Shift Class members in accordance with the law.

127.     The precise size and identity of the 80/20 Closing Shift Class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of putative 80/20 Closing Shift Class members exceeds 50 restaurant servers and bartenders.

128.     This action is intended to include each and every restaurant server and bartender who worked for Defendants at their restaurant in Sunrise, Florida during the past five (5) years who was required to spend more than 20% of his/her closing shift performing non-tipped duties and side work.

129.     During all material times hereto, Plaintiff and all 80/20 Closing Shift Class members were non-exempt employees of Defendants.

130.     Restaurant servers and bartenders' work for Defendants is an integral part of Defendants' business.

131.     Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages by not paying Plaintiff and the putative 80/20 Closing Shift Class members at least Florida's minimum wage for all hours worked.

132.    In 2018, the Florida minimum wage was $8.25.

133.    In 2019, the Florida minimum wage was $8.46.

134.    In 2020, the Florida minimum wage was $8.56.

135.    From January 1, 2021, until September 29, 2021, the Florida minimum wage was $8.65 per hour.

136.    Beginning on September 30, 2021, the Florida minimum wage was $10.00 per hour.

137.    During the relevant time period, Plaintiff and one or more of the 80/20 Closing Shift Class members complained about the illegal practices above; however, Defendants took no action to stop any of their illegal practices.

138.    The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked.

139.    Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand before this claim was filed.

140.    More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative 80/20 Closing Shift Class for any minimum wages owed.

141.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

142.     Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.  Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

143.     The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Minimum wage Act and Florida Constitution;

(b) Payment by the Defendants of liquidated damages caused by their intentional and/or willful failure to pay minimum wages pursuant to the Florida Minimum wage Act and Florida Constitution;

(c) Payment by the Defendants of the costs and expenses of this action, including attorney's fees of Plaintiff's counsel.

144.     Defendants willfully failed to pay Plaintiff and the putative 80/20 Closing Shift Class members *Florida's* full applicable minimum wage for one or more weeks of work.

145.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the 80/20 Closing Shift Class members have been damaged in the loss of *Florida* minimum wages for one or more weeks of work during their employment with Defendants.

146.     As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, TORI VAN LEHN, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE and DEBORAH ALVAREZ, and award

Plaintiff, and all others similarly situated: (a) unliquidated Florida minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted by the FMWA and Fla. Stat. 448.08; and any and all such further relief as the Court deems just and reasonable under the circumstances.

<u>COUNT IV – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS</u>
(80/20 VIOLATION DURING CLOSING SHIFTS)

147.   Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 65 as though set forth fully herein.

148.   Defendants claimed a tip credit for each hour of work for Plaintiff and all other servers and bartenders during the relevant time period.

149.   Plaintiff and all other similarly situated servers and bartenders are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendants.

150.   Defendants violated the FLSA when they required Plaintiff, and all other servers and bartenders, to spend more than 20% or their closing shifts on non-tipped duties and side work.

151.   Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following collective for Defendants' failure to pay federally mandated minimum wages:

> **All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their <u>closing shift</u> performing "non-tipped" duties and side work and did not receive the full applicable minimum wage.**

152.   Defendants willfully failed to pay Plaintiff and the putative collective members the full federal minimum wage for one or more weeks of work.

153. As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the collective members have been damaged in the loss of minimum wages for one or more weeks of work during their employment with Defendants.

154. Defendants' willful and/or intentional violations of entitle Plaintiff and the putative collective members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, TORI VAN LEHN, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE and DEBORAH ALVAREZ, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## COUNT V – FED. R. CIV. P. 23 CLASS ACTION
## FOR FLORIDA MINIMUM WAGE VIOLATIONS
### (SUBSTANTIAL SIDE WORK CLASS)

155. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 65 as though set forth fully herein.

156. Defendants claimed a tip credit for each hour of work for Plaintiff and all other servers and bartenders during the previous five (5) years.

157. Plaintiff and all other similarly situated servers and bartenders are/were entitled to be paid full *Florida minimum wage* for each hour worked during their employment with Defendants.

158. Plaintiff seeks recovery of *Florida minimum wages* under Fed. R. Civ. P. 23 for herself and the following Substantial Side Work Class because of Defendants' failure to pay Florida's constitutionally mandated minimum wages:

**All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the five (5) years preceding this lawsuit who were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift.**

159.    Pursuant to state and federal law, any side work consisting of thirty (30) or more **continuous** minutes is considered "substantial" side work and must be paid at the full applicable minimum wage.

160.    Moreover, state and federal law forbids employers from claiming a tip credit whenever tipped employees are required to spend substantial time on side work and non-tipped duties.

161.    Defendants refused to compensate Plaintiff and all other servers and bartenders the full minimum wage, including during shifts when they were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work.

162.    Defendants required Plaintiff all other servers and bartenders to arrive at opening shifts 30-minutes to 1-hour before Defendants' restaurant opened to the public. During this time, Defendants claimed a tip credit of approximately $3.02 per hour and paid Plaintiff and all other servers and bartenders less than the applicable state minimum wage.

163.    Moreover, Defendants required Plaintiff all other servers and bartenders to spend 30-minutes to 1-hour during each closing shift on side work and non-tipped duties, including when restaurant's kitchen was closed and when tipped employees could not earn tips. During this time, Defendants claimed a tip credit of approximately $3.02 per hour and paid Plaintiff and all other servers and bartenders less than the applicable state minimum wage.

164.    Because Plaintiff and all other similarly situated employees were forced to spend at least thirty (30) continuous minutes each shift on side work and non-tipped duties, Defendants

are not permitted to take the applicable tip credit for this work and committed categorical Florida minimum wage violations during the course of the previous five (5) years.

## RULE 23 CLASS ALLEGATIONS

165.    Plaintiff brings this FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all restaurant servers and bartenders who worked for Defendants in Sunrise, Florida during the five (5) years preceding this lawsuit who in one or more workweeks were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift.

166.    The putative Substantial Side Work Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wages based upon the Defendants' class-wide requirement for servers and bartenders to spend thirty (30) or more continuous minutes on non-tipped duties and side work during each shift.

167.    *Numerosity*: Defendants employed at least 50 restaurant servers and bartenders in Sunrise, Florida during the past five (5) years who were not paid Florida minimum wages as a result Defendants' requirement that these employees spend thirty (30) or more continuous minutes during each shift on non-tipped duties and side work.  Given Defendants' size and the systematic nature of their failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

168.    Plaintiff and the Substantial Side Work Class members were victim to the same employment policies, including Defendants' requirement for these employees to spend thirty (30) or more continuous minutes during each shift on non-tipped duties and side work.

169.    *Commonality*: Common questions of law and fact exist as to all members of the Substantial Side Work Class and predominate over any questions solely affecting any individual

member of the Substantial Side Work Class, including Plaintiff.  Such questions common to the Substantial Side Work Class include, but are not limited to, the following:

(a) Whether Plaintiff and the Substantial Side Work Class were "employees" of Defendants;

(b) Whether Plaintiff and the Substantial Side Work Class's hours were properly recorded;

(c) Whether Defendants violated the Florida minimum wage rights of Plaintiff and the Substantial Side Work Class under the Florida Minimum Wage Act and Florida Constitution by requiring servers and bartenders to spend thirty (30) or more continuous minutes on non-tipped duties on side work;

(d) Whether Defendants willfully or intentionally refused to pay Plaintiff and the Substantial Side Work Class Florida minimum wages;

(e) Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper time-keeping and payroll practices; and

(f) The nature, extent, and measure of damages suffered by the Plaintiff and the Substantial Side Work Class based upon Defendants' conduct.

170.  *Typicality*: Plaintiff's claims are typical of the claims of the members of the Substantial Side Work Class.  Plaintiff's claims arise from the Defendants' company-wide requirement for servers and bartenders to spend thirty (30) or more continuous minutes on non-tipped duties and side work each shift.

171.  *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Substantial Side Work Class.  Plaintiff has no interest that might conflict with the interests of the Substantial

Side Work Class.  Plaintiff is interested in pursuing her claims against Defendants vigorously and has retained counsel competent and experienced in class and employment litigation.

172.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

173.    Defendants have acted on grounds generally applicable to the Substantial Side Work Class, thereby making relief appropriate with respect to the Substantial Side Work Class as a whole.  Prosecution of separate actions by individual members of the Substantial Side Work Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Substantial Side Work Class that would establish incompatible standards of conduct for Defendants.

174.    Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Substantial Side Work Class.

175.    Plaintiff and the Substantial Side Work Class members performed the same job duties, as restaurant servers and bartenders, and were paid in an identical manner by Defendants. Defendants require all servers and bartenders to spend substantial time on non-tipped duties and side work during each shift, including 30 or more continuous minutes during opening and closing shifts on non-tipped duties and side work when Defendants' restaurant is not open to the public.

This caused state minimum wage violations during various workweeks within the applicable statute of limitations.

176.    Defendants were aware of the requirements of the FMWA and Florida Constitution's Minimum Wage Amendment, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Substantial Side Work Class members in accordance with the law.

177.    The precise size and identity of the class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiff estimates that the total number of putative Substantial Side Work Class members exceeds 50 restaurant servers and bartenders.

178.    This action is intended to include each and every restaurant server and bartender who worked for Defendants in Sunrise, Florida, during the past five (5) years who was required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift.

179.    During all material times hereto, Plaintiff and all Substantial Side Work Class members were non-exempt server and bartender employees of Defendants.

180.    Plaintiff and the Substantial Side Work Class members performed work as restaurant servers and bartenders which was integral to Defendants' business operations.

181.    Defendants violated the terms of the FMWA and Florida Constitution's provision on minimum wages by not paying Plaintiff and the putative Substantial Side Work Class members at least Florida's minimum wage for some hours worked.

182.    In 2018, the Florida minimum wage was $8.25.

183.    In 2019, the Florida minimum wage was $8.46.

184.    In 2020, the Florida minimum wage was $8.56.

185.    From January 1, 2021, until September 29, 2021, the Florida minimum wage as $8.65.

186.    Beginning on September 30, 2021, the Florida minimum wage was $10.00 per hour.

187.    The additional persons who may become Plaintiffs in this action are servers and bartenders who were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift within the previous five (5) years.

188.    Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand letter before this claim was filed.

189.    More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff and the putative Substantial Side Work Class their Florida minimum wages.

190.    The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and Florida Minimum Wage Act;

(b) Payment by the Defendants of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and Florida Minimum Wage Act as a result of Defendants' intentional and/or willful violations;

(c) Payment by the Defendants of the costs and expenses of this action, including attorney's fees of Plaintiff's counsel.

191.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the Substantial Side Work Class members have been damaged in the loss of Florida minimum wages for one or more weeks of work during their employment with Defendants.

192.    Defendants' willful and/or intentional violations state law entitle Plaintiff and the putative Substantial Side Work Class members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, TORI VAN LEHN, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE and DEBORAH ALVAREZ, and award Plaintiff, and all others similarly situated: (a) unliquidated Florida minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted under the FMWA and Fla. Stat. 448.08; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## COUNT VI – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (SUBSTANTIAL SIDE WORK COLLECTIVE)

193.    Plaintiff re-alleges and re-avers Paragraphs 1 - 65 as though set forth fully herein.

194.    Defendants claimed a tip credit for each hour of work for Plaintiff and all other servers and bartenders during the relevant time period.

195.    Plaintiff and all other similarly situated servers and bartenders are/were entitled to be paid full *federal minimum wage* for all hours worked during their employment with Defendants.

196.    Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following collective because of Defendants' failure to pay federally mandated minimum wages:

> **All restaurant servers and bartenders who worked for Defendants in Sunrise, Florida, during the three (3) years preceding this lawsuit who were required to spend thirty (30) or more continuous minutes on non-tipped duties and side work during any shift.**

197.     Defendants violated the FLSA because they required servers and bartenders to spend thirty (30) or more continuous minutes on non-tipped duties and side work.

198.     Defendants required Plaintiff and all other servers and bartenders to spend substantial time working on tip supporting work, side work and non-tipped duties and claimed a tip credit for this work (instead of paying these employees the full applicable minimum wage).

199.     Because Plaintiff and all other similarly situated employees were forced to spend thirty (30) or more continuous minutes on non-tipped duties and side work, Defendants are not permitted to take the applicable tip credit.

200.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the collective members have been damaged in the loss of minimum wages for one or more weeks of work during the previous three (3) years.

201.     Defendants' willful and/or intentional violations of entitle Plaintiff and the putative collective members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, TORI VAN LEHN, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, UNCLE AL'S SPORTS CAFÉ SUNRISE, INC. d/b/a LUV'N OVEN ALE HOUSE and DEBORAH ALVAREZ, and award Plaintiff, and all others similarly situated: (a) unliquidated federal minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs permitted under the FLSA; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, TORI VAN LEHN, demands a trial by jury on all appropriate claims.

**Date: August 31, 2022**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on August 31, 2022.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST